UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SCOTT S. SMITH,<br>        Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner<br>of Social Security Administration,<br>        Defendant. | )<br>)<br>)<br>)  CAUSE NO.: 2:19-CV-496-TLS-JPK<br>)<br>)<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed on December 24, 2019, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits [DE 13]. Defendant filed a Memorandum in Support of Commissioner's Decision [DE 16], and Plaintiff filed a Reply to Defendant's Response [DE 17].

On March 9, 2020, District Court Judge Teresa L. Springmann entered an Order [DE 9] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

On October 5, 2016, Plaintiff protectively filed an application for disability insurance benefits, alleging disability beginning March 2, 2014, due to the following impairments: rheumatoid arthritis, anxiety, panic attacks, multiple organs removed (7/8 of his left lung, half his

pancreas, and 22 feet of his small intestine), reversal of his right radius and ulna at birth, fusion of his right wrist, depression, and borderline diabetes. (AR 15, 65-66).[1] The application was denied initially and on reconsideration. (AR 65-81). Plaintiff then requested a hearing (AR 107-08), which was held before an Administrative Law Judge (ALJ) on August 31, 2018. (AR 46). On November 9, 2018, the ALJ issued an unfavorable decision, making the following findings:[2]

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since March 2, 2014, the alleged onset date.
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disorder (COPD), chronic pancreatitis and anxiety.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday, except: the claimant is unable to climb ladders, ropes or scaffolds or crawl, can frequently climb ramps or stairs and must avoid all exposure to hazards such as unprotected heights and concentrated exposure to humidity, extreme temperatures and pulmonary irritants. In addition, the claimant is able to understand, remember or carry out instructions for simple and routine tasks and is able to tolerate occasional contact with co-workers and supervisors and occasional brief and superficial contact with the public.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born [in] 1966 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

2

    8.    The claimant has at least a high school education and is able to communicate in English.

    9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from March 2, 2014, through the date of this decision.

(AR 17-27).

The Appeals Council denied Plaintiff's request for review on October 29, 2019 (AR 1-6), rendering the ALJ's November 2018 decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*,

641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether he has engaged in substantial gainful activity since the alleged onset of disability, (2) whether he has a medically determinable impairment or combination of impairments that is severe, (3) whether his impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether he is unable to perform his past relevant work, and (5) if the claimant is unable to perform past relevant work, whether he is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts three grounds for reversal of the ALJ's November 2018 decision. He contends the ALJ: (1) incorrectly determined Plaintiff's physical RFC, (2) incorrectly determined Plaintiff's mental RFC, and (3) incorrectly assessed Plaintiff's allegations of subjective symptoms and limitations. (P's Brief 4-16, ECF No. 13). As explained below, while the Court disagrees with some of Plaintiff's arguments, it recommends remand on each issue.

### I.   Plaintiff's Physical RFC

Plaintiff's first ground for appeal challenges the ALJ's physical RFC determination. As noted above, the ALJ found Plaintiff capable of light work, including the ability to sit, stand, and/or walk for six hours in an eight-hour workday. (AR 21). Plaintiff argues the ALJ improperly failed to explain how he determined these functional abilities in light of evidence indicating that he suffers from shortness of breath caused by the removal of most of Plaintiff's left lung in 2014, which (Plaintiff says) limits his ability to stand and walk. (P's Brief at 4-7, ECF No. 13). Specifically, Plaintiff points to: (1) an October 2014 pulmonary function test indicating probable restriction and FEV1 (pulmonary function) of 77% (AR 503); (2) later physical examinations indicating Plaintiff's decreased breath sounds in 2016 and 2017 (AR 581, 617); (3) diagnoses of

5

COPD (Chronic Obstructive Pulmonary Disorder), emphysema, worsening bronchitis, and cardiomegaly (an enlarged heart) between 2014 and 2018 (AR 437, 560, 562-64, 577); and (4) Plaintiff's testimony that he cannot stand for longer than an hour before experiencing chest pain, relies on an inhaler to help him breath twice a day, and experiences shortness of breath even while sitting (including during the administrative hearing). (AR 46, 51-52). (*See* P's Brief at 5-7, 13, ECF No. 13). Plaintiff maintains the ALJ erred in failing to explain how this evidence supported his conclusion that Plaintiff is able to stand and/or walk for six hours in an eight-hour workday, and in erroneously relying on examination reports of a normal gait as evidence of Plaintiff's capacity for light work, despite other evidence indicating his difficulty with daily activities due to limitations standing and walking. (*Id.* at 6-7 (citing AR 21-23, 215-17); *see also* AR 24). And these alleged errors are potentially outcome determinative, Plaintiff argues, because a determination that he is instead capable of only sedentary work would have required a finding of disability, given Plaintiff's age, education, and work history. (P's Brief at 7, ECF No. 13).

Plaintiff further contends the ALJ erred in failing to explain his conclusion that Plaintiff's physical examinations were mostly "unremarkable," despite diagnoses of bronchitis, emphysema, COPD, and an enlarged heart during the period under review. (*Id.* at 6, 13 (citing AR 24, 437, 560, 562-64, 577)). This conclusion was problematic also, Plaintiff argues, because the ALJ had no medical opinion construing this evidence, since the agency physicians who reviewed Plaintiff's application initially and on reexamination relied on an incorrect date last insured in March 2016 (three years earlier than it was later determined to be), and were unable to review updated medical records regarding Plaintiff's medical impairments. (P's Brief at 5, ECF No. 13). The ALJ's decision confirms this discrepancy, and further explains that the ALJ therefore accorded these agency opinions "little weight," due to their reliance on an incorrect date last insured and inability

6

to consider later medical records indicating Plaintiff's "history of diminished lung sounds and shortness of breath since having most of his left lung removed and that he takes medication due to having half of his pancreas removed." (AR 25). According to Plaintiff, this caused an "evidentiary deficit for the ALJ's RFC determination," and the ALJ "erred by filling that evidentiary deficit with his lay interpretation of the objective medical evidence" that the agency physicians were unable to review, when he "should have had a medical expert evaluate all of the evidence instead of making an impermissible independent interpretation of it." (P's Brief at 5-7, ECF No. 13).

The Commissioner does not dispute the agency physicians' reliance on an incorrect date last insured, or the ALJ's resulting lack of any medical opinion construing approximately three years of medical records, including additional medical records received at the hearing. (*See* AR 25). Instead, the Commissioner argues that "the ALJ identified sufficient evidence to support a restriction to a range of light work with postural and environmental limitations," and an ALJ "is not required to summon a medical expert" where "the record is sufficient to reach a determination." (D's Mem. at 8-9, ECF No. 16). Specifically, the Commissioner cites three records indicating that Plaintiff had normal breath sounds in December 2014, December 2016, and January 2017 (AR 524, 602, 607), and a September 2017 pulmonary function test showing a 90% FEV1. (AR 571). (D's Mem. at 8-9, ECF No. 16). The Commissioner also argues that Plaintiff's earlier FEV1 result of 77% indicated merely "a moderate, and close to mild, stage of COPD." (*Id*.). But the ALJ did not characterize Plaintiff's COPD as moderate or mild, and this Court "is confined to the rationales offered by the ALJ," not those later suggested by the Commissioner. *Shauger v. Astrue*, 675 F.3d 690, 695-96 (7th Cir. 2012).[3] And Plaintiff's medical record indicates that

---

[3] *See also Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) ("the ALJ's decision cannot be defended on a basis not articulated in her order"); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("the ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it").

"normal breath sounds" are not inconsistent with a "decrease in breath sounds," since both were reported simultaneously. (*See*, *e.g.*, AR 581, 617). Nor did the ALJ explain how three reports of normal breath sounds supported an ability to stand or walk for six hours in an eight-hour workday, in the face of "a history of diminished lung sounds and shortness of breath" documented in Plaintiff's medical record between 2014 and 2017, which even the ALJ acknowledged. (*See*, *e.g.*, AR 25, 308, 312, 345, 348, 385, 392, 412, 421, 427, 433, 477, 484, 577-78, 581, 608, 617). *See also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about Scott's physical capabilities.").

The ALJ's repeated reliance on Plaintiff's "normal gait" (AR 23, 24, 25) is similarly problematic. For one thing, Plaintiff's medical record once again indicates that a normal gait is not inconsistent with diminished breathing, since one of the two records reporting Plaintiff's normal gait also reported his diminished breathing. (AR 581). But as importantly, Seventh Circuit decisions repeatedly caution that a normal gait in a medical office does not establish the ability to stand or walk for six hours in a workday. *See Thomas v. Colvin*, 534 Fed App'x 546, 551 (7th Cir. 2013) (walking 50 feet during physical examination did not demonstrate ability to stand and walk for 6 hours in an 8-hour workday) (citing *Scott*, 647 F.3d at 740 (walking 50 feet without a cane during an examination, or even testimony that claimant could walk two blocks, "hardly demonstrates an ability to stand for 6 hours")). Thus, Plaintiff's reportedly normal gait does not by itself demonstrate an ability to stand and/or walk for six hours each workday as light work would require, particularly when accompanied by shortness of breath.

To be clear, none of this is to say that Plaintiff's medical record compels the conclusion that he is incapable of light work, only that the ALJ failed to explain his conclusion that Plaintiff is able to stand and/or walk six hours a day, in the face of the medical records reporting his

shortness of breath problems and other documents and testimony indicating his difficulty walking during activities. The ALJ's suggestion that Plaintiff's medical record was "mostly unremarkable" (AR 25) despite such medical findings and diagnoses of COPD, emphysema, bronchitis, and an enlarged heart (AR 437, 560, 562-64, 577) also warrants explanation. While the Commissioner is correct that an ALJ is not obliged to solicit a medical expert's opinion where the record contains sufficient evidence to render a decision (*see* D's Mem. at 9, ECF No. 16), an ALJ's independent assessment of the significance of medical findings can be problematic. *See*, *e.g. Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves") (collecting Seventh Circuit decisions); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("We have said repeatedly that an ALJ may not 'play doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny" (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)).

Accordingly, this Court recommends remand for reconsideration and a clearer explanation of Plaintiff's physical RFC, particularly his abilities to stand and walk. And in so doing, it would be prudent to consider the need for a medical expert's assessment of any medical findings relied upon, since the ALJ gave little weight to the medical opinions in the record. (AR 24-25). While discretionary, "use of a medical expert can help ALJs resist the temptation to 'play doctor,' . . . by evaluating evidence on his or her own," and "may be especially helpful when evaluating the severity of a condition . . . marked by subjective and fluctuating symptoms." *Gebauer v. Saul*, 801 Fed. App'x 404, 408-09 (7th Cir. 2020) (collecting Seventh Circuit decisions).

**II.     The ALJ's Mental RFC Determination**

Plaintiff next challenges the ALJ's mental RFC determination and related hypotheticals posed to the Vocational Expert ("VE") in three respects. As noted above, the ALJ determined that

9

Plaintiff "is able to understand, remember or carry out instructions for simple and routine tasks and is able to tolerate occasional contact with co-workers and supervisors and occasional brief and superficial contact with the public." (AR 21). While the Court rejects some of Plaintiff's challenges to this determination, it agrees that remand is warranted for reconsideration and a clearer explanation of the ALJ's determination that Plaintiff is capable of simple and routine tasks.

Plaintiff first argues that the ALJ "erred by evaluating the severity of [Plaintiff's] mental impairments independently without relying on a medical evaluation," and then provided insufficient reasons for finding Plaintiff has merely moderate limitations in concentration, persistence, or pace (commonly abbreviated as "CPP"), when evaluating his mental health impairments under the "special technique." (P's Brief at 8, ECF No. 13). As already discussed, the ALJ accorded little weight to all agency physician opinions (both medical and psychological), due to their reliance on a date last insured three years too early and their inability to consider updated medical records. (AR 25). The ALJ therefore had no psychological expert opinion on which to rely and construed Plaintiff's mental health records independently. As also noted above, the Court acknowledges the potential difficulty with an ALJ's independent assessment of medical records, and agrees that the solicitation of a psychological expert's opinion, while discretionary, may be prudent on remand. *See Brown v. Saul*, 799 Fed. App'x 915, 920 (7th Cir. 2020) ("In *Moreno*, we rejected the Commissioner's argument that newer mental health records showed improvement and so would not have made a difference to the state-agency reviewer's opinion. 882 F.3d at 729. The error was that the ALJ made his *own* assessment of the treatment records to conclude that they showed improvement.") (construing *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018) (ALJ's independent assessment of updated mental health records "was not justified under the circumstances")); *Meuser v. Colvin*, 838 F.3d 905, 911-12 (7th Cir. 2016) (remanding where

10

"ALJ's mistaken understanding of the medical evidence led him to mistakenly conclude that Meuser's mental status was 'essentially normal'").

That said, Plaintiff has failed to identify any particular mental health records or findings that the ALJ misconstrued, or any evidence indicating more severe CPP limitations than the ALJ found. Rather, Plaintiff speculatively argues that his panic attacks "*could have*" been accompanied by "diarrhea, stomach cramps, and chest pain or tightness" that "*could have* reasonably affected [Plaintiff's] ability to concentrate, persist, and keep pace on a task"; that "his medication caused irritability and mood swings, which *may have* interfered with [Plaintiff's] ability to concentrate, persist, and keep pace"; and that his "mood swings, panic attacks, anxiety, irritability, and aggressive outbursts *may have* affected his ability to concentrate, persist, and keep pace to where he was unable to meet competitive standards for off-task time." (P's Brief at 9-11, ECF No. 13 (emphasis added)). As the Commissioner correctly contends, these equivocal arguments fail to demonstrate error in an ALJ's finding of moderate (as opposed to severe) CPP limitations that is supported by substantial evidence. (D's Mem. at 8, ECF No. 16). And as even Plaintiff acknowledges, the ALJ's finding of such moderate limitations here was based on Plaintiff's ability to complete various daily activities, such as shopping and caring for his mother and dog, and clinical notes indicating he was alert and oriented. (P's Brief at 8-9, ECF No. 13; *see also* AR 20). The ALJ also cited Plaintiff's testimony attributing his concentration limitations to his breathing difficulties (not bouts of anxiety as Plaintiff now contends), and function reports indicating that he was still able to complete various household chores and daily activities to the extent his limited breathing allowed. (AR 20 (citing AR 215-19); AR 46). On this record, the ALJ's conclusion that Plaintiff suffers at worst moderate limitations in concentration, persistence, or pace was both reasonable and supported by substantial evidence.

More persuasive is Plaintiff's argument that the ALJ failed to explain how the moderate CPP limitations he found were accommodated by limiting Plaintiff to simple and routine tasks. While an ALJ need not necessarily recite limitations in concentration, persistence, or pace in an RFC or hypothetical, both sides acknowledge the need to address the triggers for such limitations sufficiently to exclude work that might involve them. (*See* P's Brief at 9, ECF No. 13 (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)); D's Mem. at 7, ECF No. 16 (same)).[4] The Commissioner argues the ALJ did so here by eliminating from Plaintiff's RFC the "weather and environmental conditions" that cause Plaintiff's breathing difficulties, and in turn, his concentration limitations. (D's Mem. at 7, ECF No. 16). Because Plaintiff testified that he experiences breathing and concentration difficulties outside air conditioning (AR 46), and reported to a medical provider shortness of breath "due to weather change and humidity" (AR 578-79), the Commissioner reasons that the ALJ's elimination of "concentrated exposure to humidity, extreme temperatures, and pulmonary irritants" from Plaintiff's RFC fully addressed his breathing and concentration limitations. (D's Mem. at 7, ECF No. 16). As Plaintiff argues, however, "the ALJ did not rely on this reasoning to make his RFC assessment." (P's Reply at 9, ECF No. 17).

Thus, while the ALJ may have intended to address Plaintiff's concentration limitations in this fashion, the decision offers no such explanation, and therefore fails to draw an accurate and logical bridge between the mental RFC and the evidence. *See Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (while ALJ "may have thought" he was addressing moderate CPP limitations with certain restrictions, as the agency proposed, the decision and hypothetical failed to draw that

---

[4] *See also Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) (RFC and hypothetical failed to exclude positions likely to trigger mental limitations: "we allowed the hypothetical in *Johansen* to stand despite its omissions because its description of 'repetitive, low-stress work' specifically excluded positions likely to trigger the panic disorder that formed the basis of the claimant's limitations in concentration, persistence, and pace") (construing *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002)); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (same, collecting decisions).

connection, and those restrictions "could just as likely been meant to account" for other limitations found by the ALJ); *Yurt*, 758 F.3d at 859 ("This failure to build an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC requires us to remand for further proceedings."). Indeed, the ALJ's decision fails to explain whether or why the environmental restrictions included in Plaintiff's RFC would effectively address Plaintiff's breathing difficulties, much less the concentration limitations they caused. The Court therefore recommends remand also for reconsideration of Plaintiff's mental RFC and a clearer explanation of whether and how it addresses his limitations in concentration, persistence, or pace and remaining on task. The ALJ should also assure during any remand that any Vocational Expert relied upon has been fully apprised of such limitations as well. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("the ALJ need not put the questions to the VE in specific terms–there is no magic words requirement," but "the ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform. . . . The best way to do that is by including the specific limitations–like CPP–in the hypothetical." (quoting *Moreno*, 882 F.3d at 730)).

Notwithstanding the Court's recommendation for remand regarding Plaintiff's CPP limitations, the Court rejects Plaintiff's further challenge to the ALJ's mental RFC determination that Plaintiff "is able to tolerate occasional contact with co-workers and supervisors and occasional brief and superficial contact with the public." (AR 21). According to Plaintiff, the ALJ erred "by providing no evidentiary support for and not explaining his finding [Plaintiff] could tolerate occasional, brief, and superficial interaction with the public but occasional interaction with coworkers and supervisors." (P's Brief at 11, ECF No. 13). But this argument overlooks the ALJ's consideration of both Plaintiff's "anxious mood" and two Function Reports from his mother stating

13

that Plaintiff is nevertheless "able to visit and socialize with friends and that he has no problems getting along with family, friends, neighbors or authority figures," when determining his "ability to relate to and work with supervisors, coworkers, and the public." (AR 20 (citing AR 230-32, 256-58)). Other function reports submitted for Plaintiff confirmed the same. (AR 218, 221, 275, 278). The ALJ also observed that Plaintiff is noticeably calmer when taking anxiety medication. (AR 20). And while Plaintiff argues that his anxiety medications caused irritability and mood swings (P's Brief at 10, ECF No. 13), his record support for this contention confirms that Plaintiff stopped taking that medication, the symptoms abated, and he felt "less anxious," "not sleepy or drowsy, not shaky," and was "able to function" on an alternative medication. (AR 605).

Plaintiff's criticism that this evidence was discussed only in connection with the ALJ's "special technique" analysis (P's Reply at 11, ECF No. 17) is also unconvincing. While an RFC determination is no substitute for a special technique analysis, an ALJ's decision must be read "as a whole," and the discussion of evidence supporting both determinations need not be repeated "throughout his decision." *Curvin v. Colvin*, 778 F.3d 648, 650 (7th Cir. 2015). Here, the ALJ clearly explained the evidence supporting his determination of Plaintiff's "ability to relate to and work with supervisors, coworkers, and the public." (AR 20). "We do not discount it simply because it appears elsewhere in the decision." *Curvin*, 778 F.3d at 650. As importantly, Plaintiff's attempts to demonstrate the insufficiency of the social restrictions included in his RFC are again speculative. Plaintiff suggests the anxiousness and irritability he displayed during examinations "*could have* affected his ability to interact with others," and his "anxiety and resulting panic attacks, irritability, uncooperativeness, and hostility *may have* impacted his ability to interact with others to the point of being work preclusive." (P's Brief at 11, ECF No. 13 (emphasis added)). Once again, as the Commissioner correctly contends, such conjecture is insufficient to displace an RFC determination

14

that is supported by substantial evidence. (D's Mem. at 8, ECF No. 16). And the ALJ's finding that Plaintiff "is able to tolerate occasional contact with co-workers and supervisors," and even further limited "occasional brief and superficial contact with the public" (AR 21) was both reasonable and supported by substantial evidence here.[5]

### III.     Plaintiff's Subjective Allegations

Finally, Plaintiff challenges the ALJ's assessment of Plaintiff's subjective allegations of physical and mental limitations as "not consistent with the objective evidence." (P's Brief at 12 (quoting AR 24)). To the extent Plaintiff argues the ALJ's rejection of such limitations was improperly based on his independent assessment of Plaintiff's medical record, the Court has already discussed the potential need for new expert medical and psychological opinions on remand, given the ALJ's understandable rejection of all agency medical and psychological opinions for their reliance on an incorrect date last insured and inability to consider updated medical records. (*See supra* at 9-10; AR 24-25)). The Court has also noted the need to address evidence indicating any difficulties Plaintiff experiences with daily activities due to limitations in standing or walking. (*See supra* at 6). Indeed, the Commissioner does not meaningfully address Plaintiff's argument that the ALJ failed to discuss Plaintiff's alleged limitations in performing daily activities such as cooking, doing dishes, and carrying groceries or laundry, or his needs for help and rest during such activities. (P's Brief at 15, ECF No. 13 (citing AR 215-17, 219-20, 253-54, 257)). While such evidence may not be sufficient to substantiate Plaintiff's claims, the Court agrees that remand is appropriate to reconsider Plaintiff's subjective allegations in light of such

---

[5] To the extent Plaintiff suggests the ALJ failed to justify the lack of a further restriction to "brief and superficial" contact with coworkers and supervisors, Plaintiff himself fails to identify any medical or other record noting the need for such further restriction, particularly in light of his own admissions, and those of his mother, stating that Plaintiff has no problem getting along with friends and authority figures, including bosses. (AR 218, 221, 230-32, 256-58, 275, 278).

evidence and any expert medical or psychological opinions assessing his updated medical record, and a clearer explanation of why any such evidence does (or does not) support Plaintiff's alleged physical and mental symptoms and limitations.

Plaintiff's further argument that the ALJ wrongly relied on evidence of drug-seeking behavior to discredit Plaintiff's subjective allegations is less persuasive, but warrants one clarification. Plaintiff maintains that SSR 16-3p requires symptom evaluation to focus on the evidence rather than "a claimant's character," and the ALJ here "violated the spirit of SSR 16-3p" by relying on evidence of Plaintiff's drug-seeking behavior "to imply [he] was untrustworthy and, therefore, his symptoms were not as severe as alleged." (P's Brief at 14, ECF No. 13). As the Commissioner correctly notes, however, "SSR 16-3p does not preclude analyzing drug-seeking behavior as a means to evaluate symptom testimony." (D's Mem. at 10, ECF No. 16). Indeed, the regulation explicitly contemplates consideration of any medications needed to alleviate a claimant's pain or other symptoms when assessing their severity, 2017 WL 5180304, at *8 (October 25, 2017), and Seventh Circuit decisions have long recognized that evidence of drug-seeking behavior may be considered when assessing whether medications were needed to alleviate the pain or other symptoms alleged. *See*, *e.g.*, *Simila v. Astrue*, 573 F.3d 503, 519-20 (7th Cir. 2009); *see also Kellems v. Astrue*, 382 Fed. App'x 512, 515 (7th Cir. 2010) (collecting Seventh Circuit decisions approving "discounting the testimony of a claimant who engaged in drug-seeking behavior," such as having "obtained, or attempted to obtain, pain medication by deceiving or manipulating a medical professional").

Thus, the ALJ's consideration of evidence of drug-seeking behavior in this case was not improper (AR 20, 24), and would not be improper on remand. Such evidence might include taking medications that were not prescribed, lying or presenting inconsistent information to medical

professionals, attempting to obtain medications without a prescription, or other controlled substance policy violations or "red flags" of drug-seeking behavior noted in Plaintiff's medical record. (*See*, *e.g.*, AR 578, 583, 599-600, 602-03). But it bears noting that an ALJ may not rely on such evidence without addressing contrary evidence explaining such behavior or otherwise corroborating the severity of claimed symptoms or limitations. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ did not err in considering the evidence that Moore's emergency room visits may have been related to an addiction problem rather than evidence of debilitating migraines, but the ALJ erred in utterly failing to even acknowledge the contrary evidence or to explain the rationale for crediting the identified evidence over the contrary evidence."). Accordingly, during any remand, the ALJ should consider not only evidence of any drug-seeking behavior, but also any entries in Plaintiff's medical record explaining such behavior or indicating that such medications were nevertheless required, any expert medical or psychological opinions regarding such need, and any other evidence corroborating Plaintiff's claimed symptoms and limitations. *See id* at 1123-24.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court reverse the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902,

904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 14th day of January, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT
